**Dena Lyn HANKERSON,
petitioner, Appellant,**

v.

**STATE of Minnesota, Respondent.**

No. A06–168.

Supreme Court of Minnesota.

Oct. 26, 2006.

Rehearing Denied Nov. 9, 2006.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, Saint Paul, MN, Stephen Betcher, Goodhue County Attorney, Goodhue County Justice Center, Red Wing, MN, For Respondent.

Benjamin J. Butler, Assistant State Public Defender, Office of the MN State Public Defender, Minneapolis, MN, For Appellant.

## OPINION

HANSON, Justice.

Appellant Dena Lyn Hankerson filed a petition for postconviction relief challenging her aggravated sentence because it was based on judicial fact finding in violation of *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The postconviction court denied Hankerson's request to vacate her sentence and impose the presumptive guideline sentence, but ordered a sentencing hearing in which it proposed to impanel a sentencing jury to resentence Hankerson under the authority of the 2005 legislative amendments to Minn.Stat. § 244.10, subd. 5(a). Hankerson argues that the court is not authorized to use a sentencing jury because, although the amendments to section 244.10 retrospectively authorize the use of a sentencing jury, the 2005 amend-

ments to Minn. Sent. Guidelines II.D do not retrospectively authorize the court to impose an aggravated sentence based on the jury's findings. She also argues that, if the amendments effectively authorize the retrospective use of a sentencing jury, they are invalid because they violate the Double Jeopardy and Ex Post Facto Clauses of the United States Constitution. We affirm.

Following a jury trial Hankerson was convicted of, among other crimes, first-degree criminal sexual conduct. The conviction arose out of a burglary and the sexual assault of a 12–year–old girl who was babysitting two young children. After a brief sentencing hearing, the court sentenced Hankerson to 264 months in prison, a 120–month upward departure from the 144–month presumptive sentence. The court explained:

> There are substantial and compelling circumstances justifying an upward departure. [The victim] was 12 years old, baby-sitting, and was particularly vulnerable. You used particular cruelty. You struck her on both sides of the face. You threatened to kill her. You threatened to kill the children in her charge. The crime involved multiple acts of penetration perpetrated against her, you forced her to penetrate you. And you used threats and coercion. That's not an element of the crime but that's how you pulled it off.

The court also imposed separate sentences for the burglary and terroristic threats convictions. The court of appeals affirmed, but reversed the terroristic threats sentence because it arose out of the same behavioral incident as the sexual assault.

*State v. Hankerson,* No. A03–131, 2004 WL 771304, at *3 (Minn.App. April 13, 2004). On June 15, 2004, we denied review.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington.* In *Blakely* the Court invalidated the defendant's aggravated sentence imposed under the Washington Sentencing Guidelines—which are substantially similar to the Minnesota Sentencing Guidelines—because it violated the Sixth Amendment as interpreted in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Blakely,* 542 U.S. at 303–05, 124 S.Ct. 2531. In *Apprendi* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. The *Blakely* Court clarified that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531.[1]

On June 2, 2005, the legislature responded to *Blakely* by amending section 244.10, subd. 5(a), and Minn. Sent. Guidelines II.D to provide for sentencing juries and bifurcated trials. Act of June 2, 2005, ch. 136, art. 16, §§ 3–6, 14, 2005 Minn. Laws 901, 1115–16, 1119. After the amendment, section 244.10, subd. 5(a), reads as follows:

> When the prosecutor provides reasonable notice under subdivision 4, the district court shall allow the state to prove

---

1. Hankerson's appeal was still pending on direct review when the *Blakely* decision was released because the time to petition the United States Supreme Court for certiorari had not expired. *See O'Meara v. State,* 679 N.W.2d 334, 339 (Minn.2004). Thus, *Blakely* applies to Hankerson's case. *See State v. Houston,* 702 N.W.2d 268, 270, 273 (Minn. 2005) (holding that *Blakely* announced a new rule of federal constitutional law that "must be applied to all cases pending on direct review").

beyond a reasonable doubt to a jury of 12 members the factors in support of the state's request for an aggravated departure from the Sentencing Guidelines as provided in paragraph (b) or (c) [addressing when the proceeding is to be unitary or bifurcated].

Minn.Stat. § 244.10, subd. 5(a) (Supp. 2005). These amendments apply "to sentencing hearings, resentencing hearings, and sentencing departures sought on or after" the effective date of the act. Sections 3–6, 2005 Minn. Laws at 1115–16. As amended, Minn. Sent. Guidelines II.D provides:

> The sentence ranges provided in the Sentencing Guidelines Grid are presumed to be appropriate for the crimes to which they apply. Thus, the judge shall pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grid. A sentence outside the applicable range on the grid is a departure from the sentencing guidelines and is not controlled by the guidelines, but rather, is an exercise of judicial discretion constrained by case law and appellate review. However, in exercising the discretion to depart from a presumptive sentence, the judge must disclose in writing or on the record the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence.

> Furthermore, if an aggravated durational departure is to be considered, the judge must afford the accused an opportunity to have a jury trial on the additional facts that support the departure and to have the facts proved beyond a reasonable doubt. If the departure facts are proved beyond a reasonable doubt, the judge may exercise the dis-

cretion to depart from the presumptive sentence.

The amendments to Minn. Sent. Guidelines II.D were made effective on "the day following final enactment." Section 14, 2005 Minn. Laws at 1119.

On August 18, 2005, we decided *State v. Shattuck*, holding that, under *Blakely*, "Minnesota Sentencing Guidelines II.D is unconstitutional insofar as it permits an upward durational departure based on judicial findings." *State v. Shattuck*, 704 N.W.2d 131, 143 (Minn.2005). We initially remanded for imposition of the guideline sentence but later modified the remand language for "resentencing consistent with this opinion," while recognizing the possibility of using the 2005 sentencing amendments. *Id.* at 148 & n. 17. We noted that we were not expressing an opinion on the constitutionality of these amendments. *Id.* at 148 n. 17.

Hankerson filed her petition for postconviction relief on August 15, 2005, arguing that *Blakely* required imposition of the presumptive sentence under the Guidelines because it was the maximum sentence authorized by the jury's verdict. The postconviction court denied Hankerson's request but scheduled a "resentencing jury trial." Hankerson filed an appeal to the court of appeals but we granted accelerated review on the issue that we left open in *Shattuck:* the effect and constitutionality of the 2005 amendments to Minn.Stat. § 244.10, subd. 5(a), and Minn. Sent. Guidelines II.D. *Shattuck*, 704 N.W.2d at 148 n. 17.

I.

■ Hankerson first argues that the 2005 amendments do not retrospectively apply to her case. Hankerson suggests that section 244.10 only addresses the identity of the fact finder, whereas Minn. Sent. Guidelines II.D is the critical provi-

sion that authorizes a district court to impose an aggravated sentence based on the findings of the fact finder. Hankerson argues that although the revisions to section 244.10, contain retroactivity language making them applicable to "resentencing," the amendments to Minn. Sent. Guidelines II.D do not and, therefore, the authority to use a sentencing jury to impose an aggravated sentence only applies to convictions entered after the act's effective date. In other words, Hankerson argues that although the 2005 legislation authorizes the retrospective use of sentencing juries, a court is without power to actually use the jury's findings for her conviction, which was entered before the act's effective date, because the amendments to Minn. Sent. Guidelines II.D were not made retrospectively applicable to that conviction.

The state argues that even if the former version of Minn. Sent. Guidelines II.D is controlling, it should be construed to authorize a district court to use the jury's findings to impose an aggravated sentence. The version of Minn. Sent. Guidelines II.D that existed when Hankerson's conviction was entered provided:

> The sentences provided in the Sentencing Guidelines Grid are presumed to be appropriate for every case. The judge shall utilize the presumptive sentence provided in the sentencing guidelines unless the individual case involves substantial and compelling circumstances. When such circumstances are present, the judge may depart from the presumptive sentence and stay or impose any sentence authorized by law. * * * When departing from the presumptive sentence, a judge must provide written reasons which specify the substantial and compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence.

Minn. Sent. Guidelines II.D (2004).

We agree with the arguments of the state. Nothing in the former language of Minn. Sent. Guidelines II.D prohibits a court from imposing a sentence based on facts found by a jury. It requires the "judge" to provide written reasons for the departure, but this could be based on facts found either by the judge or by a jury.[2] When read together, the 2005 amendments to section 244.10, subd. 5(a), and the former version of Minn. Sent. Guidelines II.D authorize a district court to impanel a sentencing jury on resentencing of a conviction obtained before the act's effective date and to use the jury's findings to impose a new sentence, including, where appropriate, an aggravated sentence.

## II.

■ We now turn to Hankerson's double jeopardy arguments. The Double Jeopardy Clause of the United States Constitution provides that "[n]o person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V.[3] The Clause protects criminal defendants from "three dis-

---

2. In fact, the amended guidelines still require the judge to "disclose in writing * * * the particular substantial and compelling circumstances that make the departure more appropriate than the presumptive sentence." Minn. Sent. Guidelines II.D (2005).

3. Similarly, the Minnesota Constitution provides that "no person shall be put twice in jeopardy of punishment for the same offense." Minn. Const. art. I, § 7. Hankerson mentions this provision but does not argue that it provides additional protections that the United States Constitution does not provide. Thus we analyze this issue under the United States Constitution only.

tinct abuses: [1] a second prosecution for the same offense after acquittal; [2] a second prosecution for the same offense after conviction; and [3] multiple punishments for the same offense." *State v. Humes*, 581 N.W.2d 317, 320 (Minn.1998).

Hankerson focuses only on the second type of double jeopardy abuse, arguing that a resentencing hearing would effectively amount to a reprosecution of the greater offense of criminal sexual conduct with aggravating factors, when she has already been convicted of the lesser offense of criminal sexual conduct. To support her view that criminal sexual conduct with aggravating factors is the "same offense" as criminal sexual conduct without aggravating factors, Hankerson relies on language from *Apprendi* where the Supreme Court characterized a sentencing factor as the "functional equivalent of an element." 530 U.S. at 494 n. 19, 120 S.Ct. 2348. The Court said:

> The term ["sentencing factor"] appropriately describes a circumstance, which may be either aggravating or mitigating in character, that supports a specific sentence *within the range* authorized by the jury's finding that the defendant is guilty of a particular offense. On the other hand, when the term "sentence enhancement" is used to describe an increase beyond the maximum authorized statutory sentence, it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense.

*Id.* Hankerson then relies on *Sattazahn v. Pennsylvania* for the application of the "functional equivalent of an element" language from *Apprendi* to the double jeopardy context:

> We can think of no principled reason to distinguish, in this context, between

what constitutes an offense for purposes of the Sixth Amendment's jury-trial guarantee and what constitutes an "offense" for purposes of the Fifth Amendment's Double Jeopardy Clause.

*Sattazahn v. Pennsylvania*, 537 U.S. 101, 111, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003) (plurality opinion); *see also Washington v. Recuenco*, —— U.S. ——, 126 S.Ct. 2546, 2552, 165 L.Ed.2d 466 (2006).

■ But we need not decide whether the aggravating factors alleged here—victim vulnerability, particular cruelty, multiple acts, and use of threats and coercion—are elements of the greater offense of criminal sexual conduct with aggravating factors or whether that greater offense is the "same offense," for double jeopardy purposes, as criminal sexual conduct without aggravating factors. We conclude that Hankerson's double jeopardy argument fails for a different reason: the failure to show that the proposed resentencing hearing would be a "second prosecution."

Under the double jeopardy test formulated in *Sattazahn*, a "second prosecution" can occur only after jeopardy from the first prosecution has terminated. *See* 537 U.S. at 106, 123 S.Ct. 732. As the Court recognized in *Sattazahn*, jeopardy does not terminate unless the fact finder affirmatively rejects the existence of aggravating factors in a manner that can fairly be called an "acquittal" on those factors. *See id.* at 107–09, 123 S.Ct. 732. In fact, the Court in *Sattazahn* held that the imposition by the jury of the death penalty in a second trial, after the jury had deadlocked on the factors necessary to support the death penalty in the first trial, did not violate double jeopardy because the retrial was not a "second prosecution" for the same offense. *Id.* at 104–06, 116, 123 S.Ct. 732. The Court said:

> Where, as here, a defendant is convicted of murder and sentenced to life impris-

onment, but appeals the conviction and succeeds in having it set aside, we have held that jeopardy has not terminated, so that the life sentence imposed in connection with the initial conviction raises no double-jeopardy bar to a death sentence on retrial.

*Id.* at 106, 123 S.Ct. 732 (citing *Stroud v. United States*, 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919)).

Perhaps even more to the point is the Supreme Court's decision in *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988). In *Lockhart*, the defendant had received an enhanced sentence as a result of the jury's verdict that the defendant had four prior felony convictions. *Id.* at 35–36, 109 S.Ct. 285. The sentence was affirmed on appeal by the Arkansas Court of Appeals, rejecting the defendant's argument that one of the prior convictions had been pardoned because the defendant had failed to object to the use of that conviction. *Id.* at 36 & n. 4, 109 S.Ct. 285. When the defendant sought a writ of habeas corpus in the federal district court, an investigation confirmed that one conviction had been pardoned. *Id.* at 37, 109 S.Ct. 285. The district court declared Lockhart's sentence invalid and determined that the Double Jeopardy Clause prevented the state from attempting to resentence the defendant by substituting another conviction for the pardoned conviction. *Id.* The Supreme Court reversed, holding:

> Permitting retrial in this instance is not the sort of governmental oppression at which the Double Jeopardy Clause is aimed; rather, it serves the interest of the defendant by affording him an opportunity to obtai[n] a fair adjudication of his guilt free from error.

*Id.* at 42, 109 S.Ct. 285 (quotations omitted).

To arrive at this conclusion, the Court first reviewed settled law that "the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside." *Id.* at 38, 109 S.Ct. 285. The Court next observed that this rule applies when the conviction was set aside by "collateral attack." *Id., see United States v. Tateo*, 377 U.S. 463, 466, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964) (stating that "[i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceeding[ ]"). The Court recognized that the only exception to this rule is where the conviction is reversed on the ground that the evidence was insufficient to sustain the jury's verdict because such a reversal is "in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury." *Id.* at 39, 109 S.Ct. 285 (citing *Burks v. United States*, 437 U.S. 1, 16–17, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)). The Court then applied the same rule to the reversal of Lockhart's sentence, allowing the state to resentence him by substituting proof of another prior conviction in place of the pardoned conviction. *Id.* at 40–42, 109 S.Ct. 285.

Applying the reasoning of *Sattazahn* and *Lockhart* here, if the state in the first trial had not sought an aggravated sentence or if the district court had "acquitted" Hankerson of the aggravating factors, double jeopardy might prevent the retrial of those factors to a sentencing jury on resentencing. Or, if the state had presented insufficient evidence to support the district court's adoption of the aggravating factors in the first trial, the *Burks* exception might likewise preclude any consider-

ation of these aggravating factors on re-sentencing. But the state did seek an aggravated sentence in the first trial. And the district court did determine, in the first sentencing hearing, that the aggravating factors had been proven by the state. There is no claim that the evidence was insufficient to prove these factors. Although the district court's findings on the aggravating factors was not expressly made "beyond a reasonable doubt," the standard of proof now required by *Blakely*, it could not be said that a court's adoption of the aggravating factors under a lesser standard of proof is equivalent to an "acquittal" on those factors for double jeopardy purposes.

The dissent suggests that the rationale of *Sattazahn*, requiring an acquittal before jeopardy terminates, does not apply here because, whereas Sattazahn's conviction was reversed on appeal, Hankerson's conviction was affirmed on appeal. But this difference is not material to the analysis, for several reasons.

First, the dissent suggests that jeopardy terminated when we denied Hankerson's petition for further review on June 15, 2004. But Hankerson's conviction and sentence did not become final at that time because the time to petition the United States Supreme Court for certiorari had not expired. And that time still had not expired on June 24, 2004, when *Blakely* was issued. If it had, Hankerson would not be entitled to the benefit of *Blakely*. *See e.g., Houston,* 702 N.W.2d at 270 (holding that *Blakely* "must be applied to all cases pending on direct review").

Second, Hankerson's postconviction petition asks the court to vacate her sentence. Absent that relief, Hankerson's original sentence stands.[4] Because it is Hankerson who requests the vacation of the sentence, she can hardly complain that she is still in jeopardy—her options are to accept the original sentence or face resentencing if the original sentence is vacated at her request. *See, e.g., Price v. Georgia,* 398 U.S. 323, 329, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970) (holding that jeopardy is not terminated where a conviction is reversed on appeal by the defendant); *Tateo,* 377 U.S. at 466, 84 S.Ct. 1587 (stating that it is well-established that reprosecution following reversal of a conviction on appeal does not violate double jeopardy).

Third, the dissent does not discuss *Lockhart,* which essentially applies the same rationale as *Sattazahn* to the resentencing of a defendant whose sentence, but not his conviction, was reversed on collateral review. *See Lockhart,* 488 U.S. at 37, 42, 109 S.Ct. 285. As in *Lockhart,* the resentencing of Hankerson will occur as a result of her successful challenge to her original sentence on collateral review. Such resentencing is not oppressive but is intended to serve Hankerson's interest in obtaining a constitutional determination of her sentence.

Our conclusion is consistent with the decisions of other state courts. The Arizona Supreme Court addressed this issue in a slightly different, but sufficiently analogous, context. In *Ring v. Arizona (Ring I )*, the United States Supreme Court held that the imposition of the death penalty based on aggravating factors found by an Arizona trial judge sitting without a jury violated *Apprendi,* and the Court remanded "for further proceedings not inconsistent with [the] opinion." *Ring I,* 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556

---

4. Although the district court's order denied Hankerson's request to vacate her sentence, the obvious implication of the court's order for a "resentencing jury trial" is that the court recognized that the existing sentence was defective under *Blakely* and will need to be vacated before resentencing can be completed.

(2002). In response to *Ring I*, the Arizona Legislature amended the death penalty statute to provide for a jury determination of aggravating factors and made this change applicable "to any sentencing or resentencing proceeding on any first degree murder case that is held after the effective date of this act." Act of Aug. 1, 2002, ch. 1, sec. 1, §§ 13–703(E), 13–703.01(C), (R)(1), sec. 7(A), 2002 Ariz. Sess. Laws 5th Spec. Sess. 2155, 2157–58, 2160, 2163. On remand from *Ring I*, the defendants in all pending death sentence appeals argued to the Arizona Supreme Court that, because the death penalty statute in existence at the time of their sentences was unconstitutional, death as a punishment conceptually did not exist. *State v. Ring* (*Ring II* ), 204 Ariz. 534, 65 P.3d 915, 925, 929 (2003). "Therefore, they argue[d], a resentencing proceeding under the new sentencing statutes would expose them to a more severe penalty than was originally available and thus constitutes double jeopardy." *Id.* at 929.

The *Ring II* court stressed that the true issue was whether the defendant had been "acquitted" of aggravating factors in the first proceeding. *Id.* at 930. The court recognized that "[t]he Supreme Court has thoroughly treated and established the legal principle" that the concern for a second prosecution after an acquittal is only implicated where the second sentence exceeds the first sentence imposed. *Id.* at 930–31. Because the trial court had imposed a death sentence in the first trial, albeit pursuant to an unconstitutional statute, the imposition of the death penalty in the second trial did not exceed the first sentence imposed. *Id.* at 931.

The Oregon Supreme Court also addressed this issue in a case involving analogous facts. In *State v. Sawatzky*, 339 Or. 689, 125 P.3d 722, 723 (2005), the defendant pleaded guilty to multiple crimes and the trial court, acting without a jury, imposed a sentence beyond the presumptive range based on a finding of "substantial and compelling reasons justifying a deviation." When this sentence was reversed on appeal as violative of *Blakely*, the trial court announced its intention to impanel a sentencing jury for resentencing on remand. *Id.* In affirming this decision, the Oregon Supreme Court held:

> [I]n this case, relator is not entitled to former or double jeopardy protection. This is not a second prosecution. Rather, it is a sentencing proceeding on remand—a continuation of a single prosecution. *See State v. Montez*, 309 Or. 564, 604, 789 P.2d 1352[, 1378] (1990) ("A penalty phase hearing is merely a continuation of the same trial and not a separate or collateral proceeding threatening a new or different sanction"). Because it is relator who challenged the legality of her sentences in the Court of Appeals, she cannot now claim that she had any justifiable expectation of finality—a fundamental jeopardy requirement—with respect to her sentences.

*Id.* at 726.

■ We find the reasoning of the Oregon and Arizona courts persuasive and hold that the use of a sentencing jury to consider aggravating factors in Hankerson's resentencing hearing does not violate the Double Jeopardy Clause.[5] Consistent

---

**5.** Hankerson also argues that on remand the state should have to retry all elements of the offenses for which she was convicted. But Hankerson did not seek review of this issue and she does not base this argument on double jeopardy grounds. Further, our own

cases involving remands to correct erroneous sentences have limited the remand to resentencing, without a retrial on the underlying charges. *See, e.g., State v. Reece*, 625 N.W.2d 822, 825–26 (Minn.2001) (reversing the district court's calculation of criminal history

with the recognition in *Ring II* that the second sentence cannot exceed the first, we acknowledge that in Minnesota, as a matter of judicial policy, a court cannot "impose on a defendant who has secured a new trial a sentence more onerous than the one he initially received." *State v. Holmes*, 281 Minn. 294, 296, 161 N.W.2d 650, 652 (1968). Thus, on resentencing, the state cannot seek and the court cannot impose a sentence in excess of 264 months.

## III.

■ The Ex Post Facto Clause of the United States Constitution provides that "[n]o State shall * * * pass any * * * ex post facto Law." [6] U.S. Const. art. I, § 10. "To fall within the *ex post facto* prohibition, a law must be [1] retrospective—that is, 'it must apply to events occurring before its enactment'—and [2] it 'must disadvantage the offender affected by it.' " *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). Having already concluded that the 2005 amendments to section 244.10, subd. 5(a), are retrospective, the only issue is whether they work to Hankerson's disadvantage.

■ There are three ways a law can work to a defendant's disadvantage: (1) by punishing " 'as a crime an act previously committed, which was innocent when done,' " (2) by making " 'more burdensome the punishment for a crime, after its commission,' " or (3) by depriving " 'one charged with crime of any defense avail-able according to law at the time when the act was committed.' " *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). Hankerson argues that the 2005 amendments to section 244.10 represent the first type of ex post facto law because they add elements to a substantive offense after its commission. She also argues that the 2005 amendments represent the second type of ex post facto law because they allow the statutory maximum punishment (i.e., the presumptive sentence) to be retrospectively increased.

■ The state argues that it is not necessary to determine whether the 2005 amendments work to Hankerson's disadvantage because they are procedural in nature, not substantive. The Supreme Court has held that even if a retrospective law works to a defendant's disadvantage, it does not violate the Ex Post Facto Clause if it is procedural. *See Dobbert v. Florida*, 432 U.S. 282, 292–93, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); *Beazell*, 269 U.S. at 169–71, 46 S.Ct. 68; *Mallett v. North Carolina*, 181 U.S. 589, 597, 21 S.Ct. 730, 45 L.Ed. 1015 (1901).

In *Dobbert* the defendant was convicted of murder and the court sentenced him to death despite the jury's recommendation of mercy, a power the legislature granted to the court after the defendant committed the offense. 432 U.S. at 287–88, 97 S.Ct. 2290. The defendant argued that the statute as applied to him was unconstitutional

score and remanding for a resentencing hearing with instructions for the district court to reconsider defendant's foreign convictions based on statutory guidelines); *State v. Williams*, 608 N.W.2d 837, 841, 843 (Minn. 2000) (reversing the sentence and remanding for a resentencing hearing with instructions for the district court to "separately identify[ ] the aggravating factors supporting each sentencing departure").

**6.** Again, Hankerson cites the corresponding clause of the Minnesota Constitution but does not argue that it provides additional protections that the United States Constitution does not provide. Thus we only address the issue under the United States Constitution.

under the Ex Post Facto Clause because the version of the death penalty statute at the time he committed the offense did not allow a judge to overrule the jury's recommendation of mercy. *Id.* at 292, 97 S.Ct. 2290. The Supreme Court rejected this argument, holding that changing the roles of the judge and jury was only procedural, and a procedural change is not an ex post facto law. *Id.* at 293–94, 97 S.Ct. 2290.

In *Collins v. Youngblood,* the Supreme Court harmonized its prior ex post facto cases based in part on this procedural law exception. The *Collins* Court held that while "[t]he right to jury trial provided by the Sixth Amendment is obviously a 'substantial' one, * * * it is not a right that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause." 497 U.S. at 51, 110 S.Ct. 2715.

*Collins* and *Dobbert* make clear that a change affecting the identity of the fact finder is procedural and thus is not burdened by ex post facto restrictions. The effect of the 2005 amendments to section 244.10 was to change the roles of the judge and jury. This is a procedural change that did not add aggravating factors, eliminate elements of aggravating factors, or increase the duration of the sentence authorized by a finding of aggravating factors. Both at the time Hankerson committed the offense and after the 2005 amendments to section 244.10, first-degree criminal sexual conduct with aggravating factors was punishable as a crime and carried with it the possibility of a 264 month sentence. The amendments only changed the procedure used to establish the aggravating factors. In *Ring II,* the Arizona Supreme Court adopted similar reasoning:

[E]x post facto principles generally do not bar applying procedural changes to criminal proceedings, [and] the general framework of a state's statutory capital sentencing scheme is procedural in nature. As *Collins* established, rights secured by the Sixth Amendment jury trial right, the right at issue here, are inherently procedural. Under the holding of *Dobbert,* Arizona's change in the statutory method for imposing capital punishment is clearly procedural: The new sentencing statutes alter the method used to determine whether the death penalty will be imposed but make no change to the punishment attached to first degree murder. The new sentencing statutes added no new element, or functional equivalent of an element, to first degree murder. Hence, the changes to the state's capital sentencing procedures do not resemble the type of after-the-fact legislative evil contemplated by contemporary understandings of the ex post facto doctrine.

65 P.3d at 928 (citations and footnote omitted).[7]

■ Even if the 2005 amendments did not fall under this procedural law exception, they are not prohibited as ex post facto laws because they do not work to Hankerson's disadvantage. "It is axiomatic that for a law to be *ex post facto* it must be more onerous than the prior law." *Dobbert,* 432 U.S. at 294, 97 S.Ct. 2290; *see also Lynce,* 519 U.S. at 441, 117 S.Ct. 891. The 2005 sentencing amendments inure to Hankerson's advantage because they afford her a new sentencing hearing where the quantum of the proof will be higher. They vindicate, not violate, Hankerson's constitutional rights. We find

---

**7.** The United States Supreme Court has characterized its holding in *Ring I* as procedural. *Schriro v. Summerlin,* 542 U.S. 348, 353, 358, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (holding that *Ring I* was procedural, not substantive, and thus did not apply to a case that was final on direct review when *Ring I* was released).

persuasive the reasoning of the Oregon Supreme Court in rejecting a similar challenge to an almost identical statutory change:

In our view, SB 528 changes only the method for determining the available punishment; it does not, however, increase that punishment. To the extent that SB 528 changes the quantum of proof required under the sentencing guidelines, it inures to defendant's advantage to require the state to prove any enhancing factors beyond a reasonable doubt. For a statute to violate state or federal *ex post facto* clauses, the statute must at least effect some kind of disadvantageous change upon a defendant. We conclude that SB 528 does not disadvantage defendant in any manner that violates the *ex post facto* clauses of either the federal or state constitutions.

*State v. Upton*, 339 Or. 673, 125 P.3d 713, 719 (2005) (citation omitted).

Hankerson's focus on the "functional equivalent of an element of a greater offense" language from *Apprendi* is also unavailing. Hankerson essentially argues that because a jury determination of the aggravating factors was not available in her first sentencing hearing, the aggravating factors did not exist as offense elements. The Supreme Court rejected a similar argument in *Dobbert*. *See* 432 U.S. at 297, 97 S.Ct. 2290.

The defendant in *Dobbert* argued that there was no death penalty "in effect" when he committed the offense because the death penalty statute was declared unconstitutional and thus subjecting him to a new death penalty statute, enacted after the invalidation of the former, would violate the Ex Post Facto Clause. *Id.* The Court rejected this argument:

Petitioner's highly technical argument is at odds with the statement of this Court in *Chicot County Dist. v. Baxter*

*State Bank,* 308 U.S. 371, 374 [60 S.Ct. 317, 84 L.Ed. 329] (1940):

The courts below have proceeded on the theory that the Act of Congress, having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored.

Here the existence of the statute served as an "operative fact" to warn the petitioner of the penalty which Florida would seek to impose on him if he were convicted of first-degree murder. This was sufficient compliance with the *ex post facto* provision of the United States Constitution.

*Id.* at 297–98, 97 S.Ct. 2290 (citations omitted).

At the time of Hankerson's criminal act, Minn. Sent. Guidelines II.D identified the same aggravating factors and provided the same potential penalty as is now contained in the 2005 amendments to Minn. Sent. Guidelines II.D. This puts Hankerson on notice that the conduct she was about to engage in was illegal, and that it carried a potential punishment of 264 months in prison. This notice satisfied the Ex Post Facto Clause.

In summary, the retrospective application of the 2005 amendments to section 244.10, subd. 5(a), is not prohibited as an ex post facto law because the change was procedural, it inured to Hankerson's advantage, and Hankerson was on notice of the criminality of her conduct and its po-

tential punishment. The change to allow for juries on resentencing "does not punish as a crime an act previously committed, which was innocent when done; nor make more burdensome the punishment for a crime, after its commission; nor deprive one charged with crime of any defense available according to law at the time when the act was committed." *Collins,* 497 U.S. at 52, 110 S.Ct. 2715.

Affirmed.

GILDEA, J., took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully dissent. As we concluded in *State v. Chauvin,* 723 N.W.2d 20, 26 (Minn.2006), filed simultaneously with this opinion, the district court had the inherent authority to convene a sentencing jury under the Minnesota Sentencing Guidelines as they existed when Hankerson was tried for her crimes. The district court did not convene such a sentencing jury but, instead, itself made findings of fact to justify an upward departure in sentence. Because those factual findings were void *ab initio* under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the sentence initially imposed upon Hankerson was illegal.

The district court now proposes to convene a "resentencing" jury that will in effect retry Hankerson, who has been already tried, convicted, and sentenced for criminal sexual conduct, for the crime of criminal sexual conduct with aggravating factors for the same behavioral incident. The convening of a sentencing jury in this case amounts to a second prosecution on a charge greater than that of which Hankerson has already been convicted, but may afford Hankerson none of the procedural protections, such as advance notice of the basis for seeking an aggravated sentence, given to criminal defendants to whom the court's recent amendments to the Minnesota Rules of Criminal Procedure apply. Because the proposed "resentencing jury trial" amounts to a second prosecution of Hankerson, I would conclude that it is barred by the Double Jeopardy Clause. I would therefore reverse the district court and direct that Hankerson's sentence be amended to no more than the presumptive guideline sentence in effect when the crimes at issue here were committed.

Appellant Dena Lyn Hankerson was charged in 2002 with criminal sexual conduct in the first, second, and fifth degrees, burglary in the first degree (two counts), terroristic threats, assault in the fifth degree, and driving after revocation, arising out of the sexual assault of a 12–year–old girl earlier that year. Nothing in the criminal complaint against Hankerson indicated that the state intended to seek an upward departure in sentencing; indeed, it was not until after the jury convicted Hankerson that the state indicated it would seek an upward departure in sentence. Nor does it appear that the state gave Hankerson any advance notice of the specific grounds for the upward departure. Based upon the state's arguments at the sentencing hearing, the district court sentenced Hankerson to 264 months in prison on the count of first-degree criminal sexual conduct, a 120–month upward departure from the presumptive sentence of 144 months. At sentencing, the court made these observations:

> On the criminal sexual conduct, standing alone that would call for a sentence of 144 months. There are substantial and compelling circumstances justifying an upward departure. [The victim] was 12 years old, baby-sitting, and was particularly vulnerable. You used particular cruelty. You struck her on both sides of the face. You threatened to kill her. You threatened to kill the children

in her charge. The crime involved multiple acts of penetration perpetrated against her, you forced her to penetrate you. And you used threats and coercion. That's not an element of the crime but that's how you pulled it off.

For those reasons on the conviction for criminal sexual conduct in the first degree I'm going to commit you to the Commissioner of Corrections for a term of 264 months. I'm adding ten years. That sentence will be served concurrently with the other sentences. You'll be given credit for time served.

Hankerson challenged both the convictions and the sentences on appeal. The court of appeals reversed the sentence for terroristic threats because it arose out of the same behavioral incident as the sexual assault, but affirmed Hankerson's convictions and sentences on the other charges, including criminal sexual conduct. *State v. Hankerson,* No. A03–131, 2004 WL 771304, at *3 (Minn.App. Apr. 13, 2004). On June 15, 2004, we denied review.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely,* the Court invalidated the defendant's aggravated sentence because it violated the Sixth Amendment as earlier interpreted by the Court in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531. In *Apprendi,* the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. As a result, according to the *Blakely* court, "the 'statu-

tory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."* *Blakely,* 542 U.S. at 303, 124 S.Ct. 2531. In *State v. Shattuck,* we held that the Minnesota Sentencing Guidelines that were in effect at the time were similarly "unconstitutional insofar as [they permit] an upward durational departure based on judicial findings." 704 N.W.2d 131, 143 (Minn.2005).

On June 2, 2005, the legislature responded to *Blakely* by amending Minn.Stat. § 244.10 and the Minnesota Sentencing Guidelines to provide for sentencing juries and bifurcated trials. Act of June 2, 2005, ch. 136, art. 16, §§ 3–6, 14, 2005 Minn. Laws 901, 1115–16, 1119. The amendments to section 244.10 apply "to sentencing hearings, resentencing hearings, and sentencing departures sought on or after" the effective date of the act (June 2, 2005). §§ 3–6, 2005 Minn. Laws at 1115–16. The act also made the amendments to the sentencing guidelines effective on "the day following final enactment." *Id.* at § 14, 2005 Minn. Laws at 1119.

Hankerson filed her petition for postconviction relief on August 15, 2005, arguing that the Supreme Court's decision in *Blakely* and our decision in *Shattuck* required that her sentence be amended to the presumptive sentence under the sentencing guidelines of 144 months because that was "the maximum sentence authorized by the jury's verdict alone." The state disputed that Hankerson was entitled to the benefit of *Blakely* but argued that, if *Blakely* did apply, the district court should set the matter on for a hearing rather than simply reduce Hankerson's sentence.[1] The postconviction court de-

---

1. In fact, the state suggested that on resentencing the district court could pronounce the presumptive sentence of 144 months for the criminal sexual conduct and make the pre-

nied Hankerson's request to vacate her sentence and instead set the matter on for a "resentencing jury trial."

Hankerson filed an appeal to the court of appeals from the denial of her petition for postconviction relief. We granted accelerated review on an issue not addressed in *Shattuck,* namely, the effect and constitutionality of the 2005 amendments to Minn.Stat. § 244.10 and Minn. Sent. Guidelines II.D.

## I.

At the time Hankerson was convicted and sentenced in 2002, Minn.Stat. § 244.10, subd. 1 (2002), read as follows:

Whenever a person is convicted of a felony, the court, upon motion of either the defendant or the state, shall hold a sentencing hearing. The hearing shall be scheduled so that the parties have adequate time to prepare and present arguments regarding the issue of sentencing. The parties may submit written arguments to the court prior to the date of the hearing and may make oral arguments before the court at the sentencing hearing. Prior to the hearing, the court shall transmit to the defendant or the defendant's attorney and the prosecuting attorney copies of the presentence investigation report.

At the conclusion of the sentencing hearing or within 20 days thereafter, the court shall issue written findings of fact and conclusions of law regarding the issues submitted by the parties, and shall enter an appropriate order.

Subdivision 2 of section 244.10 then provided that:

Whether or not a sentencing hearing is requested pursuant to subdivision 1, the

district court shall make written findings of fact as to the reasons for departure from the sentencing guidelines in each case in which the court imposes or stays a sentence that deviates from the sentencing guidelines applicable to the case.

The then-effective sentencing guidelines included a "non-exclusive" list of reasons that could be used as reasons for departure, either upward or downward. Minn. Sent. Guidelines cmt. II.D.201.

As noted above, on June 24, 2004, the United States Supreme Court decided *Blakely v. Washington.* The Minnesota Legislature responded to *Blakely* by amending Minn.Stat. § 244.10 and the Minnesota Sentencing Guidelines to provide for bifurcated trials and sentencing juries. Act of June 2, 2005, ch. 136, art. 16, §§ 3–6, 14, 2005 Minn. Laws 901, 1115–16, 1119. The legislature amended section 244.10 in two ways pertinent to this case. First, the legislature added subdivision 4, which provides:

In bringing a motion for an aggravated sentence, the state is not limited to factors specified in the Sentencing Guidelines provided the state provides reasonable notice to the defendant and the district court prior to sentencing of the factors on which the state intends to rely.

Minn.Stat. § 244.10, subd. 4 (Supp.2005). The legislature also added subdivision 5, which reads in pertinent part:

When the prosecutor provides reasonable notice under subdivision 4, the district court shall allow the state to prove beyond a reasonable doubt to a jury of 12 members the factors in support of the state's request for an aggravated departure from the Sentencing Guidelines.

sumptive sentence for burglary of 48 months consecutive, for a total sentence of 192

months.

*Id.* at subd. 5(a). At the same time, the legislature amended Minn. Sent. Guidelines II.D to provide that

> if an aggravated durational departure is to be considered, the judge must afford the accused an opportunity to have a jury trial on the additional facts that support the departure and to have the facts proved beyond a reasonable doubt. If the departure facts are proved beyond a reasonable doubt, the judge may exercise the discretion to depart from the presumptive sentence. * * * Because departures are by definition exceptions to the sentencing guidelines, the departure factors set forth in II.D are advisory only, except as otherwise established by settled case law.

As Hankerson notes, the amendments to section 244.10, applying to "sentencing hearings, resentencing hearings, and sentencing departures sought on or after" the effective date of the act, were effective on June 3, 2005. §§ 3–6, 2005 Minn. Laws at 1115–16. Similarly, the act purports to make the changes to the sentencing guidelines effective "on August 1, 2005." But the sentencing guidelines themselves provide that any modifications to them "will be applied to offenders whose date of offense is on or after the specified modification effective date." Minn. Sent. Guidelines III.F. As a result, even if the act purported to make the changes to the sentencing guidelines applicable to resentencings for crimes committed before August 1, 2005, the sentencing guidelines themselves bar any application of those changes to offenses, like Hankerson's, committed before August 1, 2005.

The court assumes, without explicitly deciding, that the 2005 sentencing guidelines do not apply to Hankerson on resentencing. For the reasons just explained, I agree that the 2005 sentencing guidelines do not apply to Hankerson. As a result, if the district court can now convene a jury to make the factual findings necessary to resentence Hankerson to more than the presumptive sentence, it must be because it is permitted under the earlier version of the sentencing guidelines.

The sentencing guidelines in effect in 2002, when Hankerson committed the acts for which she has been convicted, neither provided for nor barred the use of a jury in sentencing. With respect to departures from the guidelines sentences, the Guidelines stated only that:

> The sentences provided in the Sentencing Guidelines Grid are presumed to be appropriate for every case. The judge shall utilize the presumptive sentence provided in the sentencing guidelines unless the individual case involves substantial and compelling circumstances. When such circumstances are present, the judge may depart from the presumptive sentence and stay or impose any sentence authorized by law. When departing from the presumptive sentence, the court should pronounce a sentence which is proportional to the severity of the offense of conviction and the extent of the offender's prior criminal history, and should take into substantial consideration the statement of purpose and principles in Section I, above. When departing from the presumptive sentence, a judge must provide written reasons which specify the substantial and compelling nature of the circumstances, and which demonstrate why the sentence selected in the departure is more appropriate, reasonable, or equitable than the presumptive sentence.

Minn. Sent. Guidelines II.D (2004). As we held in *Chauvin*, the district courts had the inherent authority under the sentencing guidelines to instruct juries to make the factual findings necessary to support

upward departures in sentences. 723 N.W.2d at 29.

I therefore agree with the court's conclusion on the interpretation of Minn.Stat. § 244.10: nothing in the statute or the 2004 sentencing guidelines barred the district court, either now or then, from convening a sentencing jury to consider whether there were factors sufficient to warrant an upward durational departure from the presumptive sentence. But I conclude that the convening of a sentencing jury, after Hankerson has already been convicted and sentenced, places Hankerson in jeopardy twice for the same crime and, on that point, I disagree with the court.

## II.

The Double Jeopardy Clause of the United States Constitution provides that "[n]o person shall * * * be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause offers criminal defendants protection from three distinct abuses: (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction"; and (3) "multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). It is worth emphasizing that the Double Jeopardy Clause protects criminal defendants not just from multiple punishments, but multiple prosecutions, as the Supreme Court has observed: "The prohibition is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." *United States v. Ball*, 163 U.S. 662, 669, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). The Double Jeopardy Clause applies to the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Hankerson correctly focuses on the second type of double jeopardy abuse—a second prosecution for the same offense after conviction. Hankerson argues that her conviction of first-degree criminal sexual conduct constitutes a lesser-included offense within the offense for which the district court sought to convene a resentencing jury, namely, first-degree criminal sexual conduct with aggravating factors. And it should be beyond dispute that, Hankerson having been convicted once of first-degree criminal sexual conduct, the state could not again charge and prosecute Hankerson of criminal sexual conduct, whether first-degree or any lesser degree, involving the same behavioral incident. *See State v. Johnson*, 273 Minn. 394, 397, 141 N.W.2d 517, 520–21 (1966); Minn.Stat. § 609.035, subd. 1 (2004) (providing that if a person's conduct constitutes more than one offense, a conviction or acquittal of any one of them bars prosecution for any other of them).

But the court discards Hankerson's argument essentially on grounds that the jury trial ordered by the district court for resentencing cannot amount to a "second prosecution" because a "second prosecution" can occur only if the defendant has been acquitted of the aggravating factors, or the equivalent thereof, in the first prosecution. Unless and until there has been an acquittal, according to the court, jeopardy from the first prosecution has not terminated and as a result there can be no "double" jeopardy.

There are two problems with the court's approach on its face. First, by requiring an "acquittal" before double jeopardy applies, the court's approach eliminates two of the three categories of protections offered by the Double Jeopardy Clause: the bar against a second prosecution after con-

viction, and the bar against multiple prosecutions for the same offense. Second, by requiring an "acquittal" before double jeopardy applies, the court's approach essentially means that a guilty defendant's jeopardy never ends, not even once a conviction is final and all appeals have been exhausted. Under that scenario, what is to prevent the state from reprosecuting a defendant *ad infinitum,* provided the state keeps winning?

Nevertheless, the court relies for its approach on the Supreme Court's decision in *Sattazahn v. Pennsylvania,* 537 U.S. 101, 123 S.Ct. 732, 154 L.Ed.2d 588 (2003). The jury found Sattazahn guilty of first-degree murder, but was deadlocked during the penalty phase on whether he should be sentenced to death or to life imprisonment. *Id.* at 103–04, 123 S.Ct. 732. The trial judge therefore sentenced Sattazahn to life imprisonment, as required by Pennsylvania law. *Id.* at 104–05, 123 S.Ct. 732. But Sattazahn's conviction of murder was reversed on appeal and the case was remanded for a new trial. *Id.* at 105, 123 S.Ct. 732. On remand, the jury again found Sattazahn guilty, but this time the jury sentenced him to death. *Id.* On appeal to the Supreme Court, the question was whether the jury's initial failure to sentence Sattazahn to death barred the state under the Double Jeopardy Clause from seeking the death penalty on retrial. *See id.* It was in this procedural context that the Court observed that in such a case,

> the relevant inquiry for double-jeopardy purposes was not whether the defendant received a life sentence the first time around, but rather whether a first life sentence was an "acquittal" based on findings sufficient to establish legal entitlement to the life sentence—*i.e.,* findings that the government failed to prove one or more aggravating circumstances beyond a reasonable doubt.

*Id.* at 108, 123 S.Ct. 732. The Court went on to conclude that because the jury had deadlocked in the penalty phase of Sattazahn's first trial, there was no double-jeopardy bar to retrying Sattazahn or seeking the death penalty on retrial: the jury deadlock could not be considered an "acquittal" on the aggravating factors. *Id.* at 112–13, 123 S.Ct. 732.

There are two critical differences between *Sattazahn* and this case that the court overlooks. First, Sattazahn's conviction of murder was reversed on appeal, which allowed the state to retry him in the first place. That fact alone puts Sattazahn in a very different procedural posture than Hankerson, whose conviction was affirmed on appeal. As explained further below, that Sattazahn's conviction was reversed on appeal allowed the district court to consider the second trial merely a continuation of the first trial as well as a continuation of the initial jeopardy. Second, the jury deadlocked in the penalty phase of Sattazahn's first trial, which Sattazahn argued amounted to an acquittal on the aggravating factors. Therefore, the question Sattazahn presented was whether Sattazahn's death penalty case fell squarely into the first category of double jeopardy protection—a second prosecution after *acquittal* with specific reference to the death penalty.

When a defendant's initial conviction is reversed on appeal, courts resort to a number of theories to avoid the Double Jeopardy Clause's bar against a second prosecution and to justify retrial of the defendant. For example, some courts hold that reversal of the conviction on appeal does not terminate jeopardy. *Price v. Georgia,* 398 U.S. 323, 329, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970). Other courts resort to public policy arguments to justify retrial. *United States v. Tateo,* 377 U.S.

463, 466–68, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). When the court in this case holds that a resentencing jury does not amount to a "second prosecution," the court essentially employs the first approach—that jeopardy does not terminate until there has been an acquittal—to avoid the effect of the Double Jeopardy Clause. But, again, that argument springs from cases in which the defendant's conviction was reversed on appeal.

In contrast, again, in this case Hankerson's conviction of criminal sexual conduct was *affirmed* on appeal. As a result, regardless of the specific point at which jeopardy terminated, there should be no doubt that by the time we declined further review of her conviction on June 15, 2004 (if not before), jeopardy had terminated.[2] Under no circumstances could the state have again prosecuted Hankerson for any of the crimes of which she had been convicted arising out of the same behavioral

incident. Thus, Hankerson is in the second, not the first, category of cases protected by the Double Jeopardy Clause.[3]

I would therefore conclude that Hankerson's case is governed by a different line of Supreme Court jurisprudence, namely, cases in which the defendant invokes the Double Jeopardy Clause to block a second prosecution after the defendant has already been convicted of some lesser crime for the same behavioral incident.

Once a defendant is convicted and sentenced of a lesser offense, the state's ability to prosecute the defendant for a greater offense for the same behavioral incident is greatly limited. In *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), the Supreme Court held that the Double Jeopardy Clause allows for successive prosecutions for the same criminal act under two different criminal statutes when each statute requires proof

---

**2.** The court suggests that Hankerson's jeopardy could not have terminated as of June 15, 2004; otherwise she would not be entitled to relief under *Blakely* in the first place. Hankerson is entitled to relief under *Blakely* because when *Blakely* was decided, Hankerson still had the right to petition the United States Supreme Court for relief. *See State v. Houston*, 702 N.W.2d 268, 270 (Minn.2005). But if the Supreme Court had overturned Hankerson's conviction, say on some technicality overlooked by our courts, the state's right to retry her would not have required a finding that she was still in jeopardy from her first trial. Rather, the state could have retried Hankerson on the theory, expressed by the Supreme Court in *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978), that the prosecution is entitled to "one complete opportunity to convict those who have violated its laws." Or, the state could have employed the rationale expressed by the Supreme Court in *Tateo*, 377 U.S. at 466, 84 S.Ct. 1587, that allowing retrial after a conviction has been overturned actually protects the rights of defendants, because in the absence of such a right of retrial "it is at least doubtful that appellate courts would be as

zealous as they now are in protecting against the effects of improprieties at the trial or pretrial stage if they knew that reversal of a conviction would put the accused irrevocably beyond the reach of further prosecution." Either of these theories would have allowed Hankerson to be retried, and neither would have required a finding that she was still in jeopardy from her first trial.

**3.** The same difference plagues the court's reliance on *Lockhart v. Nelson*, 488 U.S. 33, 34–37, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988): Nelson pleaded guilty to burglary, but his conviction as an habitual criminal was set aside because one of the convictions introduced at the sentencing hearing in support of Nelson's status as an habitual criminal had in fact been pardoned. In deciding Nelson's case, the Supreme Court began with the proposition that "the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside." *Id.* at 38, 109 S.Ct. 285. Again, Nelson's conviction was set aside on appeal, but Hankerson's conviction was affirmed on appeal.

of a fact that the other does not. But when one offense is a lesser-included offense of the other, a second prosecution is barred. *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). So, for example, in *Brown* double jeopardy barred the state from prosecuting a defendant for auto theft who had previously pleaded guilty to taking or operating the same car without the owner's consent because the crime to which Brown had pleaded guilty—"joyriding"—was a lesser-included offense within the greater crime of auto theft. *Id.* at 169, 97 S.Ct. 2221. As the *Brown* court observed, "courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial." *Id.* at 165, 97 S.Ct. 2221. It is irrelevant for double jeopardy purposes whether the conviction of the greater offense precedes conviction of the lesser offense or vice versa. *Id.* at 168, 97 S.Ct. 2221.

I conclude that the proposed "resentencing jury trial" constitutes a second prosecution of Hankerson, for a greater offense for the same behavioral incident of which she has already been convicted. First, although the district court's order does not explain the process it would follow in convening a "resentencing jury trial," under *Apprendi* the resentencing jury trial must have all the hallmarks of a second prosecution. That is, due process presumably requires that witnesses at the resentencing trial testify under oath; *Apprendi* itself requires that any facts (other than a prior conviction) that may be used to support an upward departure from the presumptive sentence be proven beyond a reasonable doubt. 530 U.S. at 490, 120 S.Ct. 2348.

Moreover, that the proposed "resentencing jury trial" involves a greater offense— criminal sexual conduct with aggravating factors—than that of which Hankerson has already been convicted was confirmed by the Supreme Court in *Apprendi*. There, the Court held that any fact that increases the penalty for a crime beyond the statutory maximum must be proven to a jury beyond a reasonable doubt. *Id.* at 490, 120 S.Ct. 2348. In determining which facts must therefore be proven to the jury to warrant a harsher sentence, the Court stated that it is those facts that constitute "the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict" in the initial proceeding. *Id.* at 494 n. 19, 120 S.Ct. 2348. In his concurrence in *Apprendi*, Justice Thomas further elaborated on those facts that must be proven to a jury:

> [A] "crime" includes every fact that is by law a basis for imposing or increasing punishment (in contrast with a fact that mitigates punishment). Thus, if the legislature defines some core crime and then provides for increasing the punishment of that crime upon a finding of some aggravating fact—of whatever sort, including the fact of a prior conviction—the core crime and the aggravating fact together constitute an aggravated crime, just as much as grand larceny is an aggravated form of petit larceny. The aggravating fact is an element of the aggravated crime. Similarly, if the legislature, rather than creating grades of crimes, has provided for setting the punishment of a crime based on some fact—such as a fine that is proportional to the value of stolen goods—that fact is also an element.

*Id.* at 501, 120 S.Ct. 2348. Thus, criminal sexual conduct with aggravating factors is an "aggravated" version of the crime of criminal sexual conduct with no aggravating factors and, conversely, the crime of criminal sexual conduct with no aggravating factors is a lesser-included offense within the crime of criminal sexual conduct with aggravating factors.

Finally, the convening of a "resentencing jury" will again place Hankerson in jeopar-

dy. Jeopardy attaches when a jury is empaneled and sworn. *State v. Leroy,* 604 N.W.2d 75, 77 (Minn.1999) (citing *Crist v. Bretz,* 437 U.S. 28, 36, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978)). The only apparent difference between Hankerson's first trial and her "resentencing" trial is that Hankerson's guilt of criminal sexual conduct in the first degree will be beyond debate. But, in order to warrant an upward departure in sentence, the resentencing jury will by necessity have to find Hankerson guilty of criminal sexual conduct *with aggravated circumstances* and that will expose Hankerson to the risk of a determination of guilt of that offense.[4]

The question is therefore whether, Hankerson having been convicted and sentenced of the lesser crime of criminal sexual conduct in the first degree, the state can now prosecute Hankerson of the greater crime of criminal sexual conduct in the first degree with aggravating circumstances. I conclude it cannot.

First, nothing in section 244.10 or the sentencing guidelines, as they were promulgated at the time of the crime in 2002, barred the state from requesting the jury that convicted Hankerson, or a separate sentencing jury, to make the factual findings necessary to support an upward departure from the presumptive sentence. Nor did section 244.10 or the sentencing guidelines bar the district court from so instructing the jury or from convening a separate jury on sentencing. In other words, Hankerson could have been properly sentenced in 2002 for the greater offense of criminal sexual conduct with aggravating factors, but she was not. A second trial on the charge of criminal sexual conduct with aggravating factors therefore invokes the dangers that the Double Jeopardy Clause is intended to guard against:

4. The court suggests that, because Hankerson petitioned the district court for relief from her illegal sentence, "she can hardly complain" if the district court now convenes a "sentencing jury." This is the same argument the prosecution made in *Green v. United States,* 355 U.S. 184, 193, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). Green was convicted of arson and second-degree murder, but his convictions were overturned on appeal. *Id.* at 186, 78 S.Ct. 221. On retrial, the state succeeded in convicting Green of first-degree murder for the same incident, and Green again appealed on double jeopardy grounds. *Id.* The prosecution argued, as it does in this case, that Green, "by appealing, prolonged his original jeopardy so that when his conviction for second degree murder was reversed and the case remanded he could be tried again for first degree murder without placing him in new jeopardy." *Id.* at 193, 78 S.Ct. 221. The Court responded:

> Reduced to plain terms, the Government contends that in order to secure the reversal of an erroneous conviction of one offense, a defendant must surrender his valid defense of former jeopardy not only on that offense but also on a different offense for

which he was not convicted and which was not involved in his appeal. Or stated in the terms of this case, he must be willing to barter his constitutional protection against a second prosecution for an offense punishable by death as the price of a successful appeal from an erroneous conviction of another offense for which he has been sentenced to five to twenty years' imprisonment. As the Court of Appeals said in its first opinion in this case, a defendant faced with such a "choice" takes a "desperate chance" in securing the reversal of the erroneous conviction. The law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy.

*Id.* at 193–94, 78 S.Ct. 221. The court's result in this case similarly puts defendants like Hankerson in an "incredible dilemma": if she appeals from an illegal sentence for one offense, the state will simply try her for a greater one. I cannot agree that the law requires defendants to make such a choice.

[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

Second, I conclude that prosecuting Hankerson now for the aggravated conduct is barred under *Brown* because the crime for which Hankerson has already been convicted—criminal sexual conduct—is a lesser-included offense of the crime—criminal sexual conduct with aggravating factors—for which the district court seeks to convene a sentencing jury. *See* 432 U.S. at 166, 97 S.Ct. 2221.

Third, the convening of a "resentencing" jury violates Hankerson's right to due process. As the Supreme Court has observed:

Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that the State may impose.

*BMW of North Am., Inc. v. Gore*, 517 U.S. 559, 574, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). Those "elementary notions of fairness" are reflected, in this context, in this court's recent amendments to the Minnesota Rules of Criminal Procedure. For example, under Minn. R.Crim. P. 7.03 (as amended in 2006), the defendant is entitled to notice at least seven days before the omnibus hearing whether the state intends to seek an aggravated sentence, and is entitled to notice of "the grounds or statutes relied upon and a summary statement of the factual basis supporting the aggravated sentence." The amended comment to Rule 7 notes "it is important that defendants and defense counsel have adequate advance notice of the aggravated sentence allegations so that they can defend against them." But because the amendments to the Rules of Criminal Procedure apply only to "criminal actions commenced or arrests made after 12 o'clock midnight October 1, 2006," it is not at all clear that any of these "important" protections will apply to Hankerson.

Finally, I noted in my concurrence and dissent in *State v. Shattuck*, 689 N.W.2d 785, 786 (Minn.2004) (*Shattuck I* ), my belief that imposition of the presumptive sentence is mandatory in the absence of additional findings. The judicial findings made in Hankerson's case, like those made in *Shattuck*, were void *ab initio* and of no legal effect. I said in *Shattuck I* that I would have remanded Shattuck's case to the district court for imposition of the presumptive sentence, and I would do the same here.

I would therefore hold that the district court is barred from convening a sentencing jury in order to resentence Hankerson to a sentence exceeding the presumptive guideline sentence for first-degree criminal sexual conduct, and therefore the district court erred in denying Hankerson's motion to reduce her sentence from 268 months to the presumptive sentence of 144 months. Because I conclude that the district court's order convening a resentencing jury violated the Double Jeopardy Clause, I do not reach Hankerson's argument that the application of the 2005 amendments to section 244.10 violated the Ex Post Facto Clause of the United States Constitution.

I respectfully dissent.