STATE of Minnesota, Respondent,

v.

Gustry LaShawn SAILEE, Appellant.

No. A09–1844.

Court of Appeals of Minnesota.

Dec. 14, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and James C. Backstrom, Dakota County Attorney, Kevin J. Golden, Assistant County Attorney, Hastings, MN, for respondent.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; JOHNSON, Chief Judge; and CRIPPEN, Judge.

## OPINION

CRIPPEN, Judge.*

Appellant Gustry Sailee challenges his convictions of third-degree burglary, Minn. Stat. § 609.582, subd. 3 (2006), and first-degree criminal damage to property, Minn. Stat. § 609.595, subd. 1 (Supp.2007), arising from the burglary of a strip mall liquor

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

store. Because the district court committed reversible error when it precluded appellant from testifying to implicate another perpetrator, we reverse and remand.

## FACTS

Just after 1:00 a.m. on July 21, 2007, someone broke the window of an Inver Grove Heights liquor store and stole over $2,000 worth of liquor. Alerted by an alarm, three officers soon arrived at the scene. The officers found a small amount of smudged blood inside a broken glass case, which matched appellant's blood when tested. The store owner testified that the glass was part of a display of expensive liquor, much of which was stolen. A delivery driver testified that shortly after 1:00 a.m. he saw a man near the scene, getting into a car without other occupants.

Appellant was charged with burglary and criminal damage to property. He testified on his own behalf, but the district court did not permit him to testify that another person committed the crime. Appellant was found guilty of both counts.

A separate jury trial was conducted to determine whether appellant was a career offender, that is, whether he had "five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct." Minn.Stat. § 609.1095, subd. 4 (2008). Based on the jury's finding that appellant was a career offender, the district court sentenced him to 54 months in prison, a 15–month upward durational departure from the presumptive sentence for third-degree burglary.

## ISSUES

1. Did the district court abuse its discretion when it chose its sanction for inadequate notice of an alternative-perpetrator defense?

2. Did the district court commit other errors at trial and at the sentencing trial?

## ANALYSIS

### 1.

We review district court decisions excluding alternative-perpetrator evidence for abuse of discretion.[1] *State v. Atkinson*, 774 N.W.2d 584, 589 (Minn. 2009). If we determine that the court erred, the conviction will still stand if the error was harmless beyond a reasonable doubt. *Id.* "The error is harmless if the jury's verdict is surely unattributable to the error." *Id.* (quotation omitted).

Criminal defendants have a constitutional right to present a complete defense, including a right "to present evidence showing that an alternative perpetrator committed the crime with which the defendant is charged." *Id.* The right is not absolute, and courts "may limit the scope of the defendant's arguments to ensure that the defendant does not confuse the jury with misleading inferences." *Id.* The suggested inferences must be reasonable. *Id.* (citing *State v. Wahlberg*, 296 N.W.2d 408, 419 (Minn. 1980)).

---

1. Minnesota has used various terms to describe this type of defense, including "alternative perpetrator," *see, e.g., State v. Larson*, 787 N.W.2d 592, 597 (Minn.2010), and "third party perpetrator," *see, e.g., State v. Gutierrez*, 667 N.W.2d 426, 436 (Minn.2003). Other states have used the terms "third party culpability," *see, e.g., People v. Davis*, 10 Cal.4th 463, 41 Cal.Rptr.2d 826, 896 P.2d 119, 133 (1995); *Winfield v. United States*, 652 A.2d 608, 615 (D.C.1994), and "third party culprit," *see, e.g., State v. Francis*, 228 Conn. 118, 635 A.2d 762, 769 n. 12 (1993); *Commonwealth v. Lawrence*, 404 Mass. 378, 536 N.E.2d 571, 573 (1989).

■ Appellant took the stand at trial and, without notice to the state, testified that he did not commit the burglary and that it was committed by Demetrius Allen, who drove him to the site. He added: "I was in the car with him and tried to stop him. I went in and tried to tell the guy, get me out of here—." Citing the criminal rules, the state objected to this testimony because it had no notice of an alternative-perpetrator defense. The objection was sustained, and the jury was instructed to disregard appellant's testimony about Demetrius Allen. A similar objection later was made and sustained, when appellant again mentioned Demetrius Allen. On this occasion, appellant stated his opinion that the court was covering up the truth; the court informed appellant that the rules required notice of the defense. During closing arguments, when defense counsel sought to argue that blood samples were not tested, the court permitted the question of whether other samples would have shown appellant's blood, but determined that it could not be argued that the samples were of someone else's blood. Appellant formally demanded that Demetrius Allen be found and argued that his blood was on the scene because Allen hit him.

Minn. R.Crim. P. 9.02, subd. 1(3)(a) (2008), requires that the defendant inform the prosecutor of an intended defense "other than that of not guilty ... including but not limited to the defense of self-defense, entrapment, mental illness or deficiency, duress, alibi, double jeopardy, statute of limitations, collateral estoppel, defense under Minn.Stat. § 609.035, or intoxication."[2] Although the alternative-perpetrator defense is not specifically listed in the rule, it is a defense "other than that of not guilty" and it is similar to the alibi defense, which is specifically listed as a defense requiring notice.

"Alibi" is defined as "[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime." *Black's Law Dictionary* 85 (9th ed.2009). Like the alibi defense, the significance of the alternative-perpetrator defense is derived from the physical impossibility of guilt of the accused, at least when it is established that the crime was committed by a single person. Moreover, requiring notice for an alternative-perpetrator defense is supported by the same policy considerations as requiring notice for an alibi defense; both afford the state an opportunity to investigate the new evidence. *See Williams v. Florida*, 399 U.S. 78, 81, 90 S.Ct. 1893, 1896, 26 L.Ed.2d 446 (1970) (citing ease in fabricating an alibi defense and importance of insuring both parties have opportunities to investigate crucial facts); *State v. Engstrom*, 226 Minn. 301, 310, 32 N.W.2d 553, 557–58 (1948) (Peterson, J. dissenting) (noting identification of alibi as a "hip pocket defense" due to ease of fabrication). An alternative-perpetrator claim presents the same risk and need for investigation.

■ But application of the discovery rule is necessarily limited by the defendant's due process right to testify in his own defense. *See generally In re Welfare of M.P.Y.*, 630 N.W.2d 411, 415 (Minn. 2001) (noting defendant's due process right to testify in his own defense) (citing *Rock v. Arkansas*, 483 U.S. 44, 51, 107 S.Ct. 2704, 2708–09, 97 L.Ed.2d 37 (1987); *State v. Ihnot*, 575 N.W.2d 581, 587 (Minn.1998)). Because of this right, courts must be "particularly cautious in reviewing a court's decision to preclude a defendant's testimo-

---

**2.** The rule has been renumbered and slightly reworded since the time of trial, but any changes do not impact the substance of the rule. *See* Minn. R.Crim. P. 9.02, subd. 1(5)(a)–(j) (2010).

ny." *M.P.Y.*, 630 N.W.2d at 416. Preclusion of evidence "cannot be arbitrary or disproportionate to the purpose the sanction was meant to serve." *Id.* Although application of the discovery rule is within the discretion of the court, "the trial court 'should take into account: (1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors.'" *Id.* at 417 (quoting *State v. Lindsey*, 284 N.W.2d 368, 373 (Minn. 1979)).

■ The district court in this case did not consider alternative ways of rectifying the prejudice to the state from the lack of notice, or the other *Lindsey* factors, when making its decision to preclude appellant's alternative-perpetrator testimony. This failure to consider the *Lindsey* factors is an abuse of discretion. We appreciate that prior decisions of counsel on notice under rule 9.02 may have been affected by prior ambiguity of the rule. *See id.* at 417 (applying the first *Lindsey* factor and recognizing that defense counsel's mistake of well-settled law was not a good reason to fail to disclose).

■ Despite this error in excluding the testimony, appellant's conviction will stand if the error was harmless beyond a reasonable doubt. *Atkinson*, 774 N.W.2d at 589. An "error is harmless if the jury's verdict is surely unattributable to the error." *Id.* (quotation omitted). The evidence appellant sought to introduce would have refuted the state's theory of how his blood was found at the scene. Without an alternative explanation for the presence of his blood, it would have been unreasonable for the jury to acquit appellant. The record does not establish beyond a reasonable doubt that the restrictions placed on appellant's testimony did not impact the jury's verdict. *See M.P.Y.*, 630 N.W.2d at 419

(reversing conviction due to prejudice of being unable to prove alibi). Because the district court's error is not "surely unattributable" to the jury's ultimate guilty verdict, we reverse and remand for further proceedings. *See id.*

## 2.

Appellant raises a number of other claims of trial error. Although we find no additional reversible error, we address these issues as they bear on proceedings upon remand of the case.

### Inserting Itself into Plea Negotiations

■ Due process requires that a judge have no actual bias against a defendant or an interest in a case's outcome. *Bracy v. Gramley*, 520 U.S. 899, 904–05, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997). We review de novo whether a defendant's due-process right to an impartial judge was violated. *State v. Dorsey*, 701 N.W.2d 238, 249 (Minn.2005).

■ The district court offered appellant a 39–month prison sentence before the trial, presided over the trial, and then ultimately sentenced him to 54 months. Appellant claims that the 39–month pretrial offer violated his right to an unbiased judge, alleging that the 54–month sentence that was ultimately issued was in retaliation for appellant's refusal to accept the pretrial plea offer.

Precedents suggest that the district court's plea offer was improper. *State v. Johnson*, 279 Minn. 209, 216, 156 N.W.2d 218, 223 (1968) (prohibiting court participation in plea bargaining); *State v. Anyanwu*, 681 N.W.2d 411, 414 (Minn.App. 2004) (citing impropriety of the court's advance promise of a particular sentence). But appellant did not accept the court's offer.

Under these circumstances, appellant must show that the judge was biased as a result of improperly injecting himself into plea negotiations. This is a heavy burden because "[t]here is the presumption that a judge has discharged his or her judicial duties properly." *State v. Mems,* 708 N.W.2d 526, 533 (Minn.2006). "Adverse rulings by a judge, without more, do not constitute judicial bias." *Id.* We conclude that the 54–month sentence and the judge's remarks, without more, are insufficient to show actual bias.

*Failing to Inquire about Appellant's Conflicts with his Attorneys*

Although appellant's reasons for wanting to replace his primary attorney were unclear, the district court should have conducted a more searching inquiry. *See State v. Clark,* 722 N.W.2d 460, 464 (Minn.2006) (holding that serious allegations prompt the need for "searching inquiry" by the district court). But prior to trial, appellant acknowledged that counsel was "doing a fine job and we can go ahead and move forward." Appellant also told the court to let counsel "continue the case," and that "this is my counsel and I can proceed with [her]." Given these comments, it was not an abuse of the district court's discretion to fail to conduct a searching inquiry on the subject.

Appellant later requested that his second attorney be discharged. The court observed that both attorneys were from the public defender's office and that one could not be removed without the other. Appellant asserts prejudice on the handling of his alternative-perpetrator claim, but there is no showing that any such error resulted from having a second attorney. Appellant has failed to demonstrate he was prejudiced by having two attorneys. *See State v. Fields,* 311 N.W.2d 486,

487 (Minn.1981) (requiring demonstrated prejudice for reversal).

*Admitting Other Act Evidence of a 12–year–old Burglary*

The district court admitted evidence that appellant was the lookout in a 1997 burglary as relevant to prove that he was the burglar here. The district court admitted the prior burglary to prove identity, which is among purposes enumerated in Minn. R. Evid. 404(b).

Appellant contends that the 1997 burglary is only similar to the current burglary to the extent that they both contain the generic elements of burglary; for example, that they both occurred at a business, at night, involved the breaking of a window to gain entry, and the items stolen were valuable.

Our reversal on other grounds makes it unnecessary to determine whether the court erred. But for purposes of remand, we call attention to *State v. Wright,* 719 N.W.2d 910, 917 (Minn.2006), in which the supreme court permitted use of *Spriegl* evidence "if identity is at issue and if there is a sufficient time, place, or modus operandi nexus between the charged offense and the *Spriegl* offense." Respecting the requirement of sufficient similarity, the court held that "if the prior crime is simply of the same generic type as the charged offense, it ordinarily should be excluded." *Id.* at 917–18. And the older the prior crime, the greater the similarity required for the prior crime to be relevant. *Id.* at 918.

*Impaneling a New Jury for Sentencing Trial*

Appellant claims that his rights against double jeopardy were defeated by the impaneling of a new jury to determine if he was a career offender. *See* U.S. Const. amend. V; Minn. Const. Art. 1 § 7. The double jeopardy claim is

reviewed de novo. *State v. Leroy,* 604 N.W.2d 75, 77 (Minn.1999).

After appellant was found guilty of burglary and criminal damage to property, a presentence investigation was completed and a second jury determined that he was a career offender. The bifurcated process was in accord with statute. Minn.Stat. § 609.1095, subd. 4, permits an upward departure "if the factfinder determines" the career-offender elements. *See State v. Adkins,* 706 N.W.2d 59, 64 n. 3 (Minn.App. 2005). Minn.Stat. § 244.10, subd. 5 (2008), specifically authorizes the use of bifurcated trials and impaneling separate sentencing juries. And appellant does not claim a lack of statutory authority for submitting the second part of the proceedings to a new jury. *See State v. Chauvin,* 723 N.W.2d 20, 24 (Minn.2006) (stating the district court has inherent judicial authority to impanel a sentencing jury).

In *Hankerson v. State,* 723 N.W.2d 232, 233, 237–41 (Minn.2006), the supreme court determined that the offender's double jeopardy rights were not violated when the district court denied her postconviction request to vacate her sentence and impose the presumptive guideline sentence, but impaneled a new jury to consider aggravating factors. The court reasoned that so long as aggravating factors are not previously rejected by the jury in a manner that can be characterized as an acquittal on those factors, there is no second prosecution. *Id.* at 237.

The reasoning in *Hankerson* governs the present case. The state notified appellant that it sought an aggravated sentence from the beginning of the process, and career-offender factors were not presented to the first jury. Thus, there was no second prosecution. Appellant's constitutional rights against double jeopardy were not violated when the district court bifurcated the trial.

## Admitting Complaints of Prior Offenses

We review whether the admission of evidence violates a defendant's confrontation rights de novo. *State v. Caulfield,* 722 N.W.2d 304, 308 (Minn.2006). A criminal defendant enjoys the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. "Statements in a complaint are hearsay" that implicate the Confrontation Clause. *Wright,* 719 N.W.2d at 917 n. 1.

At appellant's sentencing trial, the state introduced numerous documents, including certified copies of judgments and criminal complaints, in order to prove that appellant was a "career offender" under Minn. Stat. § 609.1095, subd. 4. Appellant objected to the evidence generally, but it is unclear on what grounds he objected. The only issues the district court and the state discussed on the record were the relevance and authentication of the documents. There was no objection, or discussion on the record, based on hearsay or the Confrontation Clause.

 Because the issue was not preserved, a reviewing court will reverse only if there was (1) error; (2) that was plain; and (3) that affected appellant's substantial rights. *State v. McClenton,* 781 N.W.2d 181, 193 (Minn.App.2010) (quoting *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998)), *review denied* (Minn. June 29, 2010). In *McClenton,* we held that admitting criminal complaints into evidence in a career-offender sentencing trial constituted plain error. *Id.* But we further concluded that admission of the complaints, although casting the defendant in a bad light, did not cause substantial prejudice where there was other evidence of a pattern of criminal conduct. *Id.* at 195.

A similar analysis would be required here to determine whether reversible error occurred. The state introduced certi-

fied judgments on each of appellant's prior convictions of simple robbery, receiving stolen property, third-degree burglary, terroristic threats, criminal damage to property, and conspiracy to commit theft. Although certified judgments alone were sufficient to prove the first part of the career-offender inquiry, that "the offender has five or more prior felony convictions," they were not sufficient to prove the second part of the inquiry, "that the present offense is a felony that was committed as part of a pattern of criminal conduct." Minn.Stat. § 609.1095, subd. 4; *see McClenton*, 781 N.W.2d at 194. That part of the inquiry requires consideration of whether the prior felony offenses involved acts "similar to the present offense in motive, purpose, results, participants, victims or other characteristics." *State v. Gorman*, 546 N.W.2d 5, 9 (Minn.1996).

Under *McClenton*, it was error to admit prior criminal complaints to prove the alleged pattern of criminal conduct. Because we have reversed the convictions on other grounds, we need not examine the effects of this error on appellant's rights in the prior sentencing hearing.

### DECISION

The district court committed reversible error by precluding appellant's alternative-perpetrator-defense testimony without first considering alternative means to rectify the absence of notice. We reverse appellant's convictions of third-degree burglary under Minn.Stat. § 609.582, subd. 3, and first-degree criminal damage to property under Minn.Stat. § 609.595, subd. 1, and remand to the district court for further proceedings that may include a new trial, and if necessary, resentencing.

**Reversed and remanded.**