*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0205**

State of Minnesota,
Respondent,

vs.

Travis Clay Andersen,
Appellant.

**Filed December 29, 2014
Affirmed in part, reversed in part, and remanded
Crippen, Judge***

Carver County District Court
File No. 10-CR-11-1064

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark Metz, Carver County Attorney, Colin Haley, Assistant County Attorney, Chaska, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)


        Considered and decided by Worke, Presiding Judge; Reyes, Judge; and Crippen, Judge.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CRIPPEN**, Judge

Appellant Travis Andersen disputes his convictions of felony fourth-degree assault and gross misdemeanor obstructing legal process with force, arguing that he was improperly removed from the courtroom during trial just as he was about to testify, and that the district court erred in imposing multiple sentences where his convictions arose out of the same behavioral incident. We affirm appellant's convictions because we are not persuaded that the district court abused its discretion when it ordered appellant's removal from the courtroom, but appellant's sentence for obstructing legal process must be vacated.

## FACTS

Respondent State of Minnesota charged appellant with felony fourth-degree assault, involving infliction of demonstrable bodily harm, in violation of Minn. Stat. § 609.2231, subd. 1 (2010), and gross misdemeanor obstructing legal process, involving force or violence, in violation of Minn. Stat. § 609.50, subds. 1(2), 2(2) (2010). The charges were based on conduct occurring October 21, 2011, when Chaska Police Officers Lee LeClure and Lee Meyer attempted to arrest appellant on a warrant. During the arrest, appellant was verbally upset and resisted the officers' efforts to secure him in the squad car. Appellant mule-kicked his leg into Officer LeClure's shin, causing "a sharp pain" that "continued to throb" after the interaction. Appellant maintained that it was a reflex caused by the officers pushing on his leg. Another officer took photos of the officer's shin, showing an abrasion. A booking photo showing that appellant had a gash in his

forehead at the time of his arrest was also admitted into evidence. The jury found appellant guilty of both counts, and the district court imposed sentence on both counts.

**D E C I S I O N**

**1.**

Appellant claims that the district court violated his constitutional right to be present at trial. The state counters that appellant's right to be present was waived by his voluntary conduct. In the circumstances surrounding the district court's decision to exclude appellant based on his conduct during the trial, the court did not abuse its discretion.

At trial, appellant personally objected to Officer Meyer's testimony about appellant's past violent contacts with police. Outside the presence of the jury, the district court explained that appellant could not speak on his own but had to rely on his attorney to make objections and communicate in court. The trial resumed, and just before appellant's counsel began to cross-examine Officer Meyer, appellant blurted out, "You should be ashamed of yourself." During this cross-examination, appellant interjected that he saw the prosecutor shaking his head no, and the court reminded appellant to raise concerns with his attorney and admonished appellant, "If you want a trial, you just got to be quiet."

But shortly after this discussion, appellant appeared before the court and was prepared to testify. The district court had previously ruled that appellant's prior convictions were admissible as impeachment, and repeatedly reminded appellant that if he testified he could not refuse to answer questions and the jury would hear about his

3

prior convictions. During a recess, appellant insisted that he wanted to call another police officer, Sergeant Longhway, as a witness because he believed she had taken photos of injuries he sustained during the arrest. Sergeant Longhway is retired and no one knew how to contact her. The prosecuting attorney was unaware of any photos, other than the booking photo that was admitted into evidence. Nonetheless, the prosecuting attorney obtained the inmate behavior log, and jail staff was contacted to see if any photos of appellant had been taken. The district court explained that no one could confirm that any additional photographs of appellant had been taken, and "[i]f photos were taken, they do no[t] exist." Appellant persisted in demanding to have Sergeant Longhway testify. Counsel advised appellant that he would have to calm down if he was going to testify. At that point, appellant announced that he was "done with this erroneous behavior in this courtroom," that he was "leaving this courtroom," and that he wanted to be taken back to prison. The district court noted that appellant was very clear that he was absenting himself from trial.

After appellant absented himself from trial, the district court made a record about appellant's earlier conduct during trial that the district court had "overlooked because it hasn't been so egregious": sighing and throwing himself back in his chair; mouthing words; saying that the officer should be ashamed of his testimony; talking over counsel, the court, and witnesses; and evidencing "no desire to comport himself with any even modicum of maturity, modicum of decorum." Defense counsel also made a later record that he had conversations with appellant about his behavior and that by "voluntarily

4

getting up and removing himself" appellant was giving up his right to testify. Appellant's counsel requested a no-adverse-inference instruction on appellant's behalf.

After a short break, appellant returned to the courtroom to testify. But in the presence of the jury, appellant insisted that Sergeant Longhway testify because she took pictures of his bruises. The court excused the jury and advised appellant that he could testify about the photographs after he took the oath "like any other witness," but not by "freelancing or talking as you sit at the table." The court assured appellant that no one was cutting him off from presenting evidence, but he had to be placed under oath and respond to questions, not as a narrative. Appellant only agreed to testify after Sergeant Longhway was called as a witness. At that point, the court removed appellant from the courtroom "by his conduct, his demonstrated unwillingness to cooperate and proceed."

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to be present at all stages of his or her trial. U.S. Const. amend. VI; *State v. Gillam*, 629 N.W.2d 440, 450 (Minn. 2001). The Minnesota Rules of Criminal Procedure also provide that a criminal defendant must be present for every stage of trial. Minn. R. Crim. P. 26.03, subd. 1(1). But the Supreme Court has long recognized that a defendant can forfeit fundamental constitutional rights by engaging in bad conduct purposefully directed at the constitutional right that is forfeited. *Compare Reynolds v. United States*, 98 U.S. 145, 158 (1878) (holding defendant could not assert constitutional right of confrontation where his wrongdoing procured the witness's absence from trial) *with Giles v. California*, 554 U.S. 353, 377, 128 S. Ct. 2678, 2693 (2008) (holding forfeiture by wrongdoing did not apply to murder victim's out-of-court statements where

there was no evidence that defendant killed the victim to prevent her from testifying against him).  Forfeiture means that the defendant's conduct is so egregious that he does not have to be warned that his conduct will result in the loss of a constitutional right.  *See State v. Jones*, 772 N.W.2d 496, 505 (Minn. 2009) (adopting forfeiture doctrine for waiver of right to counsel).  A defendant may forfeit his or her constitutional right to be present at trial based on severe misconduct.  *See Illinois v. Allen*, 397 U.S. 337, 339-41, 343-44, 90 S. Ct. 1057, 1059, 1060-61 (1970) (holding district court acted within its discretion in removing defendant from trial where he conducted himself in a disorderly, disruptive, and disrespectful manner, which included throwing papers on the floor, threatening to kill the judge, and using vile and abusive language while in court).

In addition to forfeiture, a defendant may waive his or her presence at trial in one of two ways:  (1) expressly by absenting himself from the trial "without justification" or (2) impliedly by engaging in conduct, after first being warned, "that justifies expulsion from the courtroom because it disrupts the trial or hearing."  Minn. R. Crim. P. 26.03, subd. 1(2); *see also State v. Finnegan*, 784 N.W.2d 243, 247 (Minn. 2010) (holding defendant's waiver of right to be present at trial may be express or implied from conduct).  The district court "must indulge every reasonable presumption against the loss of constitutional rights."  *Finnegan*, 784 N.W.2d at 247.  The decision to proceed with trial in absentia is reviewed under an abuse of discretion standard, and the court's factual findings will not be disturbed unless clearly erroneous.  *Gillam*, 629 N.W.2d at 450.

The record discloses that appellant's conduct throughout the trial was disrespectful and disruptive to the court proceedings.  Without reaching a conclusion on whether

appellant's conduct was as egregious as that of the defendant in *Allen* to justify forfeiture of the right to be present, we conclude that the record supports implied waiver based on appellant's conduct. *See Jones*, 772 N.W.2d at 505 (noting that waiver of a constitutional right by conduct occurs if a defendant voluntarily engages in misconduct knowing what he stands to lose). Although the record does not reflect an explicit warning that appellant's conduct would result in removal from trial, appellant's repeated, deliberate refusal to participate as directed by the district court makes it evident that he could not participate, that he would be removed, if he persisted in ignoring the district court's repeated instructions and admonitions. *Cf. State v. Kluck*, 299 Minn. 161, 167, 217 N.W.2d 202, 207 (1974) ("While the court below may not have explicitly warned defendant of the possibility of exclusion itself, there was certainly adequate warning that corrective measure would be taken if defendant's disorderly conduct continued."). For example, the district court repeatedly advised appellant that he had to rely on his counsel and could not make his own objections or statements in court. The district court also advised appellant multiple times that Sergeant Longhway was not going to testify at trial, and if appellant wanted to testify, he would have to do so after taking an oath like any other witness. Also, the need for removal as a consequence of his refusal to participate as instructed was shown by appellant's own earlier choice, when not being permitted to act as he chose, to remove himself from the trial. A careful review of the record does not suggest that the district court abused its discretion by removing appellant from the courtroom based on his implied waiver by conduct.

7

Because we conclude that it was not an abuse of discretion to remove appellant from the courtroom, it is unnecessary to address the question of whether the error was harmless. Nonetheless, even if it was error, appellant has not demonstrated that he is entitled to a new trial. Appellant argues that his exclusion from the courtroom is not subject to harmless-error review because it precluded him from testifying in his defense. But the case appellant relies on for this proposition, *State v. Rosillo*, 281 N.W.2d 877, 879 (Minn. 1979), is inapposite because in that case the defendant's attorney denied him his right to testify. Here, on the other hand, appellant's removal from the courtroom based on his conduct is the reason he was unable to testify.

Appellant argues that his exclusion from the courtroom was not harmless because he was deprived of his right to present his side of the story, *see State v. Richardson*, 670 N.W.2d 267, 288 (Minn. 2003), and his testimony was necessary on the issue of whether he "acted intentionally." Criminal defendants have a constitutional right to testify in their defense. *Andersen v. State*, 830 N.W.2d 1, 11 (Minn. 2013). But like other constitutional rights, the right to testify may be waived, provided the waiver is knowing and voluntary. *See State v. Bahtuoh*, 840 N.W.2d 804, 815 (Minn. 2013). Although the better practice is to place the defendant's waiver of the right to testify on the record, *see State v. Berkovitz*, 705 N.W.2d 399, 405-08 & 408 n.1 (Minn. 2005), Minnesota does not require that a defendant's waiver of the right to testify be made on the record, *see In re Welfare of M.P.Y.*, 630 N.W.2d 411, 416 (Minn. 2001). "When the trial court record is silent as to waiver, this court 'must presume that the decision not to testify was made by defendant

voluntarily and intelligently.'"  *State v. Walen*, 563 N.W.2d 742, 751 (Minn. 1997) (quoting *State v. Smith*, 299 N.W.2d 504, 506 (Minn. 1980)).

The record is clear that appellant wanted to testify and that the district court advised him of his right to testify.  But the record is equally clear that the district court advised appellant that he would have to take an oath and respond to questions like other witnesses.  Because appellant persisted in ignoring the court's admonitions that he had to take an oath and could not otherwise speak out from counsel table, the record reflects that appellant understood that he would not be able to testify unless he complied with the court's rules.  Appellant's voluntary and intelligent waiver of his right to testify can be implied from his conduct.

Finally, even if it was error to exclude appellant, depriving him of his right to testify, the error was harmless.  The harmless beyond a reasonable doubt standard applies when a defendant is wrongly excluded from the courtroom.  *State v. Ware*, 498 N.W.2d 454, 457-58 (Minn. 1993).  This is because the error implicates a constitutional right.  *See State v. Davis*, 820 N.W.2d 525, 533 (Minn. 2012) ("When an error implicates a constitutional right, we will award a new trial unless the error is harmless beyond a reasonable doubt.")  "An error is harmless beyond a reasonable doubt if the jury's verdict was 'surely unattributable' to the error."  *Id.*  The state has the burden of proving that the error did not contribute to the jury's verdict.  *M.P.Y.*, 630 N.W.2d at 419.  The record reflects that the jury's guilty verdict was surely unattributable to the exclusion of appellant and his testimony from trial.  Appellant's defense theory was that he did not intentionally kick the officer, but it was a reflexive reaction to being pinned against the

car.  Intent is generally proved by circumstantial evidence.  *See State v. Pederson*, 840 N.W.2d 433, 436 (Minn. App. 2013) (analyzing sufficiency of conviction of fourth-degree assault under circumstantial-evidence standard).  Appellant told the officers that the kick was a reflex, and the officers repeated his claim in their trial testimony.  Additionally, appellant's father was an eyewitness to the incident who testified that he did not see appellant kick Officer LeClure, and that it would not have been possible for appellant to cause demonstrable bodily harm, i.e., the scrape, because appellant was not wearing shoes.  Appellant's defense theory was, therefore, presented to the jury, and the jury's guilty verdict shows that they rejected it.  And, based on the circumstances surrounding the officers' attempt to arrest appellant and transport him, appellant's alternative hypothesis that the kick was a reflex is not reasonable.  *See id.* (rejecting appellant's claim of an alternative rational hypothesis that she did not act volitionally to kick the officer but only hit him accidentally after he wrestled her to the ground).  The district court also instructed the jury not to draw any adverse inferences from the fact that appellant did not testify and that he "decided not to participate in the tail end of this case."  And if appellant had testified, the jury would have learned of his prior felony convictions.  In sum, even if it was error to exclude appellant from the courtroom and preclude him from testifying, the error surely did not contribute to the verdict.

**2.**

At sentencing, the district court imposed a sentence of 22 months in prison for the fourth-degree assault conviction and a concurrent sentence of 365 days in jail for the obstructing-legal-process conviction.  Appellant argues that the district court erred in

10

imposing multiple sentences for appellant's convictions of fourth-degree assault and obstructing legal process because those offenses arose out of the same behavioral incident. The state agrees.

Serialized prosecutions and multiple punishments are prohibited by Minn. Stat. § 609.035, subd. 1 (2012). This statute provides that a defendant who commits multiple offenses against the same victim during a single behavioral incident may be sentenced for only one of those offenses. *See State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn. 1995). Although appellant did not raise this issue in the district court, a defendant cannot waive the prohibition against double punishment. *See State v. Johnson*, 653 N.W.2d 646, 651 (Minn. App. 2002). Assault and obstructing legal process both have intent as a necessary element. *See* Minn. Stat. §§ 609.01, subd. 10 (defining assault as including the intentional infliction of bodily harm), .50, subd. 1 (including "intentionally" as an element of the definition of obstructing legal process) (2010). In *State v. Cogger*, this court applied the test for intentional crimes in deciding whether separate sentences for convictions of fourth-degree assault and obstructing legal process were permitted. 802 N.W.2d 407, 411-12 (Minn. App. 2011), *review denied* (Minn. Mar. 28, 2012). This test requires the court to consider the unity of time and place and whether the conduct was motivated by a single criminal objective. *Id.* at 412. This court concluded that the crimes were part of a single behavioral incident where the offenses occurred in the same time and place and involved the same purpose, i.e., to prevent arrest, and reversed the 365-day sentence for obstructing legal process. *Id.*

11

Appellant relies on *Cogger* to support his assertion that multiple sentences are prohibited because obstructing legal process was part of the single behavioral incident with the fourth-degree assault. The state concedes that "there is no evidence in the record that would suggest [appellant's] purpose was anything other than to hinder or prevent arrest." The record supports the state's concession. We therefore reverse and remand to the district court with instructions to vacate the 365-day sentence for obstructing legal process.

**Affirmed in part, reversed in part, and remanded.**