*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1221**

Jason Lamar Forest, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed May 6, 2024**
**Affirmed**
**Jesson, Judge**[*]

Steele County District Court
File No. 74-CR-19-918

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Julia A. Forbes, Steele County Attorney, Owatonna, Minnesota (for respondent)

Considered and decided by Smith, Tracy M., Presiding Judge; Connolly, Judge; and

Jesson, Judge.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**JESSON**, Judge

After a jury found appellant Jason Lamar Forest guilty of first-degree criminal sexual conduct and terroristic threats for sexually abusing his minor stepson on multiple occasions and threatening to kill him, Forest appeals from a denial of a petition for postconviction relief. Forest contends that the postconviction court erred by concluding that two evidentiary errors at his trial did not warrant relief. Specifically, he challenges the district court's decisions to exclude defense evidence as a sanction for its late disclosure and to admit the stepson's sister's testimony as relationship evidence. Because we discern no abuse of discretion by the district court, we affirm.

## FACTS

On June 6, 2019, respondent State of Minnesota charged appellant Jason Lamar Forest with two counts of criminal sexual conduct and one count of terroristic threats. According to the complaint, police received a report from the older sister of a 14-year-old boy, N.D., that N.D. had told her that Forest sexually assaulted him. Officers then spoke to N.D., who confirmed that the abuse occurred "thousands of times" between January 2015, and May 29, 2019. According to N.D., the abuse included Forest touching N.D.'s penis and his buttocks as well as forced oral and anal penetration of N.D. Forest threatened to kill him if he told anyone about the abuse, N.D. further reported. The complaint did not state the nature of the relationship between Forest and N.D., but the evidence later would establish that Forest is N.D.'s stepfather.

Before trial, the state moved to introduce relationship evidence relating to a past incident of domestic abuse by Forest against another member of the household, the older sister. According to the motion, Forest had previously assaulted the sister by throwing her into a wall, punching her in the head, threatening to slit her throat, and cutting her on the arm with a knife. The incident resulted in a terroristic threats conviction. Over Forest's objection, the district court ruled that the evidence was admissible.

The next day trial began. But before voir dire had been completed, Forest's defense counsel told the district court that he had received, for the first time that morning, evidence that would support an alibi defense for the date of May 29, 2019, the final date of abuse according to the complaint. Forest's attorney told the district court that Forest had shown him a cellphone video taken on May 29, 2019, at 6:00 pm of a high-school track meet where Forest's voice can be heard in the background. The state objected to the admission of that evidence on the grounds that it was late, that the case had been ongoing for a year and a half, and that the parties were in the middle of jury selection. The state maintained that if the evidence were admitted, the state would need a continuance to investigate the new evidence. The district court ruled that the evidence was inadmissible as a sanction for the late disclosure.

At trial, N.D. testified consistently with the state's allegations. He explained that Forest began abusing him one week after his ninth birthday when Forest forced N.D. to perform oral sex on him. The abuse occurred about every other day and eventually escalated to forced anal sex. Whenever N.D. attempted to resist, Forest would respond by

3

threatening him and beating him. N.D. believed Forest's threats to kill him. The final incident of abuse occurred at around 4:00 pm on May 29, 2019, N.D. testified.[1]

N.D.'s older sister also testified, both about N.D.'s disclosure to her and about the prior incident of domestic abuse between her and Forest. As to the prior incident, the sister explained that on February 1, 2015, Forest hit, kicked, and punched her after a dispute about her dating life. Forest threatened to kill her during this encounter.

The jury found Forest guilty as charged, and the district court convicted Forest of one count of first-degree criminal sexual conduct. The district court sentenced Forest to 201 months' imprisonment and imposed a ten-year period of conditional release.

Forest petitioned for postconviction relief, arguing that the district court committed reversible error by excluding the late-disclosed cellphone video as evidence and by admitting sister's testimony as relationship evidence. The postconviction court denied the petition. Forest appeals from that denial.

**DECISION**

Forest contends that the postconviction court erred by failing to conclude that the district court committed reversible error by excluding the cellphone-video evidence as a sanction for late disclosure and by admitting the sister's testimony about the prior instance of domestic abuse.[2] He also maintains that even if neither of these alleged errors

---

[1] N.D. testified specifically that the final incident of abuse occurred the Wednesday before he reported the incident to law enforcement. This would be May 29, 2019.

[2] Forest never filed a direct appeal, and so he is entitled to review of all issues in this appeal from the denial of his postconviction petition as if it were an appeal from final judgment. *See Deegan v. State*, 711 N.W.2d 89, 92 (Minn. 2006) (stating first review by postconviction is similar to direct appeal).

independently requires reversal, the cumulative effect of these errors does. We review both a postconviction court's denial of a petition for relief and a district court's evidentiary rulings for an abuse of discretion. *State v. Nicks*, 831 N.W.2d 493, 495 (Minn. 2013) (postconviction petition); *State v. Kelly*, 435 N.W.2d 807, 813 (Minn. 1989) (evidentiary rulings). Because we discern no abuse of discretion, we affirm.

**I.  The district court did not abuse its discretion by excluding the cellphone evidence as a sanction for Forest's late disclosure.**

Under the due-process clauses of the United States and Minnesota Constitutions, a defendant in a criminal trial has the right to present a complete defense. U.S. Const. amend. XIV; Minn. Const. art. 1, § 7; *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992). But that right does not absolve a defendant of his duty to comply with procedural rules in order to maintain "[t]he values sought to be achieved through reciprocal discovery." *State v. Lindsey*, 284 N.W.2d 368, 373-74 (Minn. 1979). This duty includes complying with Minnesota's rules of criminal procedure, which dictate that at the prosecutor's request, the defendant must notify the prosecutor in writing before the omnibus hearing that the defendant intends to assert an alibi defense. *See id.*; Minn. R. Crim. P. 9.02, subd. 1(5). A defendant's failure to abide by this rule may result in the imposition of sanctions, including the exclusion of the late-disclosed evidence. *Lindsey*, 284 N.W.2d at 373. In determining whether to exclude late-disclosed defense evidence, the district court judge should consider "(1) the reason why disclosure was not made; (2) the extent of prejudice to the opposing party; (3) the feasibility of rectifying that prejudice by a continuance; and (4) any other relevant factors." *Id.*

5

Here, as the district court appropriately concluded, none of the *Lindsey* factors weighed against the exclusion of the evidence as a sanction. The district court found, and Forest does not dispute, that there was no good reason for the late disclosure as the evidence was within Forest's possession. And as the district court recognized, the extent of the prejudice to the state was high and could not be easily remedied by a continuance. The prosecution was to begin presenting their case the same afternoon it learned of the new evidence. And given that this evidence was a cellphone video, the prosecution may have needed—as the district court observed— to perform a voice analysis or track the locations of the phones of other witnesses. This prejudice could not be remedied by a continuance because the disclosure occurred after trial began and the state had already ensured the availability of a number of professional witnesses. The district court did not abuse its discretion by excluding the evidence as a sanction.

Still, Forest contends that the district court failed to consider the extent of the prejudice to the state and the possibility of remedying that prejudice through a continuance. We are not persuaded. It is true that a failure to consider these factors constitutes an abuse of discretion. *See In re Welfare of M.P.Y.*, 630 N.W.2d 411, 418-19 (Minn. 2001) (reversing where there was "no evidence in the record that the trial court considered a continuance or that the state requested one"). But here the district court thoroughly considered both of these factors and acted within its discretion when concluding that the factors supported the evidence's exclusion.

**II.** **The district court did not abuse its discretion by admitting the sister's testimony as relationship evidence.**

Evidence showing that a defendant committed domestic abuse against the victim or against another family or household member is admissible in a criminal trial so long as the evidence's probative value is not "substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. Stat. § 634.20 (2022). The purpose of this rule, as the supreme court noted, is "to illuminate the history of the relationship" between the defendant and the alleged victim and "to put the crime charged in the context of the relationship between the two." *State v. McCoy*, 682 N.W.2d 153, 159 (Minn. 2004). And a defendant's treatment of his family is probative of how a defendant interacts with those closest to him, including the victim. *State v. Valentine*, 787 N.W.2d 630, 637 (Minn. App. 2010), *rev. denied* (Minn. Nov. 16, 2010).

Here, the district court concluded that the probative value of the sister's testimony was not substantially outweighed by the danger of unfair prejudice. We agree. The 2015 incident involved threats of violence by Forest against a family member,[3] including threats to kill. Given that one of the charges to be proved at trial was terroristic threats by Forest against N.D., specifically the threat to kill, the sister's testimony was directly on point. Moreover, the danger of unfair prejudice was low in light of the district court's decision to instruct the jury that it could not convict Forest in the instant case based on sister's

---

[3] Forest is also the stepfather of the older sister who reported the abuse and who testified at trial.

7

testimony about the 2015 abuse. We presume that juries follow instructions, *State v. Vang*, 774 N.W.2d 566, 578 (Minn. 2009), and we see nothing to overcome that presumption here.

**Affirmed.**